## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

TIMOTHY ROBINSON,

      *Plaintiff,*

    *v.*

ST. LOUIS CORRECTIONAL
FACILITY MAILROOM STAFF,

      *Defendant.*[1]

_____/

CASE NO. 2:16-cv-13691

DISTRICT JUDGE GERSHWIN DRAIN

MAGISTRATE JUDGE PATRICIA T. MORRIS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF (Doc. 36)

### I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Plaintiffs' Motion for Injunctive Relief, (Doc. 36), be **DENIED**.

### II.    REPORT

#### A.    Introduction

On October 14, 2016, Plaintiff Rodrick Robinson (also known as Timothy Robinson) filed this complaint against Defendants Edward Rodarte, Robert Vashaw, Ray Sholtz, Laura McCormick, Yolanda Bush, Bradley Peete, Wendi Walworth, Susan Havelka, Steven Rivard, St. Louis Correctional Facility ("SLF") Health Care Staff, and SLF Mailroom Staff, all in their official capacities. (Doc. 1 at 1); (Doc. 1, Attachment A); (Doc. 21). At the time of filing, Plaintiff was confined in SLF in Saint Louis, Michigan,

---

[1] As discussed below, other Defendants were dismissed by order of the Court on March 15, 2017.

under the jurisdiction of the Michigan Department of Corrections ("MDOC"). (Doc. 1 at 1). On March 15, 2017, all Plaintiff's claims were dismissed except his First Amendment claim against the SLF Mailroom Staff based on his allegations that they unlawfully opened his legal mail. (Doc. 25 at 122).

District Judge Gershwin A. Drain referred all pretrial matters excluding dispositive motions to the undersigned Magistrate Judge on October 24, 2016, (Doc. 5), and thereafter, Plaintiff filed the present Motion for Injunctive Relief on September 29, 2017. (Doc. 36). Defendant responded on October 6, 2017. (Doc. 37.) Below, I summarize the allegations set forth in Plaintiff's motion, as well as allegations in the complaint insofar as they correspond to the relief sought at this juncture.

### B.    Factual Background

In his complaint, Plaintiff describes how on January 29, 2016, a corrections officer gave him two "unsealed letters" that were "clearly" marked as privileged attorney-client and confidential communications. (Doc. 1, Attachment B at 1). He "immediately notified" the corrections officer "that the letters were 'legal' mail and the letters were opened." (*Id.*) He then filed a grievance. (*Id.*). The mailroom staff received "a verbal warning" in response. (Doc. 1, Attachment C at 1).

In his motion for injunctive relief, Plaintiff describes another incident in which his mail was delivered to him opened. On August 1, 2017, Plaintiff sent an institutional kite to St. Louis Correctional Facility mailroom staff requesting they "hold all incoming mail due to his transfer to another facility . . . ." (Doc. 36 at 161). The staff responded that they would do so. (*Id.*). On August 8, 2017, Robinson was transferred to a different

2

correctional facility for judicial proceedings. (Doc. 36 at 162). About a month later, he returned to St. Louis Correctional Facility, and the next day sent SLF a kite giving notice of his return. (*Id.*)

A couple of days later, around September 8, 2017, a correctional officer gave Plaintiff an opened envelope with a return address of "Melinda Nardone" of "Heckaman & Nardone, Inc." printed on the front. (Doc. 36 at 162). Plaintiff asserts that the mailroom staff had also written on the front of the envelope: "Certified Short Hand Reporters." (*Id.*). The envelope itself was empty; the "documents are missing and are irretrievable." (Doc. 36 at 163).

### C. Motion for Preliminary Injunctive Relief

Plaintiff does not specify whether he is seeking a temporary restraining order ("TRO") or a preliminary injunction ("injunction"), but moves for injunctive relief in two forms: (1) an order for specific compliance with MDOC Policy Directive 03.03.130: Humane Treatment and Living Conditions for Prisoners which restates his underlying claim regarding interference with his legal mail, and (2) an order "for institutional transfer to prevent future violations." (Doc. 36 at 164).

### 1.    Injunctive Relief Is Unavailable Against Non-Parties

As an initial matter, this Court lacks the jurisdiction to order the institutional transfer that Plaintiff requests. The Federal Rules of Civil Procedure provide that an order granting an injunction or a restraining order "binds only the following . . . : (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other

persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)." FED. R. CIV. P. 65(D)(2).

Federal case law confirms that "[a] court is powerless to adjudicate a personal claim against a party unless it has jurisdiction over the party, and even a party who is alleged to be in concert or participation is to be accorded a hearing for a determination of his role in the matter before a determination is made that the party is subject to the injunction." *Herrera v. Dep't of Corrections*, No. 5:10-cv-11215, 2011 WL 3862640 at *1, *3 (E.D. Mich. 2011) ("To the extent that plaintiffs seek an injunction binding officials at the Newberry Correctional Facility who are not parties to this action, the Court lacks jurisdiction to enter such an injunction."); *see Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110 (1969) ("It is elementary that one is not bound by a judgment in personam resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process.").

Defendant argues that the only defendant remaining in this case is the St. Louis Correctional Facility Mailroom Staff, and "[t]hey have no involvement in the transferring of prisoners from one prison to another." (Doc. 37 at 174). Since no named party has the power to affect Plaintiff's transfer, he is implicitly requesting that this Court issue an injunction binding on a non-party. This is beyond the Court's power. For that reason alone, Plaintiff's request for injunctive relief regarding a transfer should be denied.

## 2. Request for a Preliminary Injunction as to Plaintiff's Underlying Claim Should Be Denied

4

At this point in the case, it is inappropriate to seek a preliminary injunction based on the only surviving underlying claim against the Defendant. However, even if it were appropriate, I suggest his motion should be denied.

### a.  Procedural Requirements

Under Federal Rule of Civil Procedure 65(a), a preliminary injunction may be issued "only on notice to the adverse party." Here, Plaintiff asserts he mailed a copy of the motion to Defendant's counsel on September 22, 2017. (Doc. 36 at 166).  Defendant filed a response on October 6, 2017. (Doc. 37). Therefore, I assume Defendant received notice of this motion.

### b.  Substantive Requirements

When considering whether to issue preliminary injunctive relief, a court must balance the following four factors:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction.

*Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012). Because preliminary relief is "an extraordinary remedy," the movant must make a far more stringent showing of proof than that required to survive summary judgment. *Winger v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see Farnsworth v. Nationstar Mortg., LLC*, 569 F. App'x 421, 425 (6th Cir. 2014). "Although no one factor is controlling," a movant who cannot demonstrate likelihood of success on the merits typically cannot attain preliminary relief. *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). Even

so, a plaintiff need not present an "overwhelming" showing of potential success on the merits in order to prevail. *Sellers v. Univ. of Rio Grande*, 838 F. Supp. 2d 677, 679 (S.D. Ohio 2012). Further, "where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting." *Sango v. Wakley*, No. 1:14-cv-703, 2014 WL 3894652, at *2 (W.D. Mich. Aug. 8, 2014).

Federal Rule of Civil Procedure 65(b) imposes additional safeguards on the issuance of TROs because they may be granted *ex parte*. Their issuance may occur without written or oral notice to an adverse party *only* if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and the movant "certifies in writing any efforts made to give notice and the reasons why it should not be required." *Id.* 65(b)(1)(A)-(B). Such relief, if granted, may only last a maximum of fourteen days absent an extension for good cause or pursuant to consent from an adverse party. *Id.* 65(b)(2). The court must also schedule a preliminary-injunction hearing "at the earliest possible time" where the party who obtained the order must proceed with the motion or else forfeit the relief. *Id.* 65(b)(3). And the adverse party "may appear and move to dissolve or modify the order" on two days' notice to "the party who obtained the order without notice . . . ." *Id.* 65(b)(4).

### i.      Likelihood of Success on the Merits

When considering a claim for preliminary injunctive relief, the first prong a court must address is whether the plaintiff has a strong likelihood of success on the merits.

6

*Bays v. City of Fairborn*, 668 F.3d 814, 818 (6th Cir. 2012). Here, Plaintiff's motion is largely based on his First Amendment claim that Defendant unlawfully opened his legal mail outside his presence, allegedly in violation of MDOC policy.[2]

Before addressing Plaintiff's First Amendment legal mail claim, I pause to mark that part of Plaintiff's motion might be construed as an allegation of discriminatory conduct: "Plaintiff pleads this court to order injunctive relief in the form of ordering specific compliance with Michigan Department of Corrections Policy Directive 03.03.130, 'Humane Treatment,' which directs MDOC staff from involvement in retaliation which . . . provides protection to Plaintiff from discrimination, retaliation, and reprisal for filing a report." (Doc. 36 at 164). But aside from this lone, abstract sentence, Plaintiff's Motion is devoid of any facts suggesting discrimination, retaliation, or reprisal, including any mention of having filed "a report." Thus, I construe his Motion as based solely in his First Amendment legal mail claim.

The Sixth Circuit has recognized that "[t]he right of a prisoner to receive materials of a legal nature, which have impact upon or import with respect to that prisoner's legal rights and/or matters, is a basic right recognized and afforded protection by the courts . . . ." *Kensu v. Haigh*, 87 F.3d 172 (6th Cir. 1996). Thus, at least "[u]pon request, a Michigan prisoner's 'legal mail' must be examined in his presence." *Muhammad v. Pitcher*, 35 F.3d 1081, 1083-84 (6th Cir. 1994). Courts "have consistently recognized that 'legal mail' includes correspondence from elected officials and government agencies, including

---

[2] I note that Plaintiff does not appear to contest the policy itself; he complains that "the opening of the envelope was in violation of clear institutional policy." (Doc. 36 at 163).

the offices of prosecuting officials such as state attorneys general." *Id.* at 1083. More recently, the Sixth Circuit has added mail from a court to that list: "In order to guard against the possibility of a chilling effect on a prisoner's exercise of his or her First Amendment rights and to protect the right of access to the courts . . . mail from a court constitutes 'legal mail' and cannot be opened outside the presence of a prisoner who has specifically requested otherwise." *Sallier v. Brooks*, 343 F.3d 868, 877 (6th Cir. 2003). Prison officials may, however, impose restrictions that are "reasonably related" to security or other "legitimate penological objectives." *See Knop v. Johnson*, 977 F.3d 996, 1012 (6th Cir. 1992). For example, the U.S. Supreme Court found it "entirely appropriate" for the State to require legal mail to be marked as such in order for it to "receive special treatment." *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974); *see also Merriweather v. Zamora*, 569 F.3d 307, 312 (6th Cir. 2009). Additionally, the Sixth Circuit held it was not unconstitutional for a correctional facility to require prisoners to "opt in" by requesting in writing that their legal mail be opened in their presence, as long as prisoners received written notice of the policy, did not have to renew the request upon transfer, and were not required to designate particular attorneys as their counsel. *Knop*, 977 F.2d at 1012.

This case, like *Sallier*, concerns MDOC's policy directive 05.03.118. MDOC operates under an opt-in system that provides that "[a] prisoner may have his/her incoming legal mail receive special handling . . . by submitting a written request to the institution's mailroom Supervisor, or Residential Reentry Program facility Supervisor or designee, as appropriate." MDOC Policy Directive 05.03.118(HH). The only mail

8

eligible for special handling is that "from an attorney or law firm, a legitimate legal service organization, a non-prisoner paralegal working on behalf of an attorney, law firm, or legal service organization, the Department of Attorney General, a prosecuting attorney's office, a court, a clerk of the court, or a Friend of the Court," and it must be "clearly identified on the face of the envelope as being from one of the above. It is not sufficient for the envelope to be simply marked 'legal mail.'" *Id.*

Unlike the prisoner in *Sallier*, however, Plaintiff never submitted "a written request to be present when my legal mail is opened." *Id.* at 874. Nor was the piece of mail at issue in his motion marked as legal mail. (Doc. 36 at 167). The sender is identified only as "Melinda Nardone" of "Heckaman & Nardone, Inc.," and offers no indication of what business that office conducts. (*Id.*). Further, according to Plaintiff himself, the handwritten notation "Certified Short Hand Reporter" was not on the envelope when it arrived, but was added later by the St. Louis Correctional Facility Mailroom Staff. (*Id.* at 162 ("The envelope was marked on the front of it by St. Louis Correctional Facility Mailroom Staff: 'Certified Short Hand Reporters.'"); 167). Even that notation does not appear to be enough to make the envelope "legal mail"—shorthand reporter, certified or no, does not appear in MDOC Policy Directive 05.03.118.

Thus, Plaintiff's claim is far removed enough from the established boundaries of First Amendment protections to cast serious doubt on his likelihood of success on the merits.

## ii.    Irreparable Injury

The second prong of the preliminary injunction analysis is whether the movant would suffer irreparable injury absent an injunction. *Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012). "In determining whether a plaintiff has shown irreparable injury, courts consider the substantiality of the injury alleged, the likelihood of its occurrence, and the adequacy of the proof provided." *Reuther v. Chapman*, No. 07-CV-12249, 2007 WL 4790803, at *2 (E.D. Mich. Oct. 22, 2007) (citing *Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987)). The plaintiff "must provide some evidence that the harm has occurred in the past and is likely to occur again." *Ohio ex rel. Celebrezze*, 812 F.2d at 290.

Here, Plaintiff offers that "[t]he opening of this mail  . . . resulted in further loss to Plaintiff, as documents are missing and are irretrievable." (Doc. 36 at 163). He does not elaborate on what the documents were or what insurmountable obstacles stand between him and a second copy. But "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). Although Plaintiff describes his lost document as "irretrievable," there is nothing in his motion to indicate why the document could not be replaced with the proper time, money, and energy. Thus, this factor does not weigh in favor of granting him a preliminary injunction.

Nor does it weigh in favor of granting Plaintiff a TRO, for which he must "clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Even if Plaintiff's loss was

irreparable, he has failed to clearly show that similar loss awaits him in the immediate future.  Fed. R. Civ. P. 65(b)(1).

Additionally, the question of irreparable harm is linked with the probably of success on the merits. Where, as here, a plaintiff "does not have a likelihood of success on the merits . . . his argument that he is irreparably harmed by the deprivation of his First Amendment right also fails." *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012); *see also Michigan Catholic Conference & Catholic Family Serv. v. Burwell*, 755 F.3d 372, 398 (6th Cir. 2014).

### iii.     Substantial Harm to Others and Public Interest

I consider together the final factors: whether the injunction would cause substantial harm to others, and whether the public interest would be served by the issuance of an injunction. *Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012).

Plaintiff does not appear to address either of these factors, and it is not clear how the public interest would be served by the issuance of either of Plaintiff's requested injunctions. On the other hand, MDOC "has an interest in promulgating and enforcing regulations, including reasonable rules involving correspondence among inmates and jail security." *Johnson v. Wickersham*, No. 13-13672, 2014 WL 4897387 at *1, *3 (E.D. Mich. Sept. 11, 2014). As the U.S. Supreme Court noted in *Jones*, "[b]ecause the realities of running a penal institution are complex and difficult, we have also recognized the wide-ranging deference to be accorded the decisions of prison administrators." *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 126 (1977).

As for Plaintiff's request for an injunction ordering MDOC to comply with one of its internal policy directives, I also mark that courts have consistently held injunctions null and void when they merely instruct a party to "obey the law." *See Burton v. City of Belle Glade*, 178 F.3d 1175, 1201 (11th Cir. 1999) (holding that an injunction which prohibited municipality from discriminating on the basis of race would do "no more than instruct the defendant to 'obey the law,'" and therefore was invalid); *Equal Emp't Oppor. Comm'n v. Wooster Brush Co. Emps. Relief Ass'n*, 727 F.2d 566, 576 (6th Cir. 1984) ("'[s]uch "obey the law" injunctions cannot be sustained'") (quoting *Payne v. Travenol Laboratories, Inc.,* 565 F.2d 895, 897-98 (5th Cir. 1978)). For this reason as well as those explained above, these factors weigh against both of Plaintiff's requests for injunctions.

### D. Conclusion

For the foregoing reasons, the weight of the four factors is against granting Plaintiff's Motion. Therefore, **IT IS RECOMMENDED** that Plaintiffs' Motion for Injunctive Relief, (Doc. 36), be **DENIED**.

## III.   REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991);

12

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  October 12, 2017     S/ PATRICIA T. MORRIS
              Patricia T. Morris
              United States Magistrate Judge

## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.  A copy was also sent via First Class Mail to Timothy Robinson #319601 at St. Louis Correctional Facility, 8585 N. Croswell Road, St. Louis, MI 48880.

Date: October 12, 2017     By s/Kristen Castaneda
              Case Manager